UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## 05 CIV. 4896

JOE F. BROWN,

**ROBINSON**

     PLAINTIFF,

vs.

ORANGE AND ROCKLAND
UTILITIES, INC.,

**COMPLAINT**

     DEFENDANT.

-----------------------------------------------------x

By and through his counsel, Michael H. Sussman, plaintiff Joe F. Brown

claims and alleges the following against defendant:

### PARTIES

1. Plaintiff, Joe F. Brown, is a resident of the County of Orange, State of

New York.  He is African American and of legal age.

2. Defendant is a publicly-regulated utility doing business within this

judicial district.  It may sue and be sued and is required to comply with federal

civil rights laws.

### JURISDICTION

3. As plaintiff contends that defendant violated rights accorded to him by

42 U.S.C. sec. 1981, this Honorable Court has jurisdiction pursuant to 28 U.S.C.

secs. 1331, 1343 (3) & (4) and 42 U.S.C. sec. 1983 and 1988.  As plaintiffs state

cause of action arises from the same nucleus of operative facts as his federal claim, 28 U.S.C. sec. 1367 provides this Court jurisdiction to hear and resolve it.

## FACTUAL ALLEGATIONS

4. Plaintiff is a long-time employee of defendant corporation, last employed as Assistant Storekeeper.

5. For the last eight years, plaintiff has been the only African-American within the "Stores Division", which is responsible for buying and distributing all materials and supplies for the company.

6. To plaintiff's knowledge and belief, the Stores Division has never employed another African-American.

7. In September 2002, plaintiff reported to two department managers that a Caucasian employee, Kevin Pheil, had been baselessly accusing him of stealing materials and giving them to contractors.

8. To plaintiff's knowledge, neither manager took any action against Mr. Pheil.

9. In October and November 2002, other members of the Division began ignoring and snubbing plaintiff and he was accused of hiding materials and supplies.

10. In March 2003, frustrated that management had taken no action to

resolve his situation, plaintiff informed his union of the conduct of his co-workers, particularly hang-up phone calls to his home.

11.  In July or August 2003, with the harassment at work continuing, plaintiff went to Elaine Farley, a Human Resources officer for the defendant.

12.  She reported to plaintiff that his complaint against Mr. Pheil, his supervisor, was unfounded.

13.  In December 2003, after more than a year of unfounded accusations and increasing isolation, plaintiff reported this conduct to a corporate Vice President.

14.  In January 2004, plaintiff met with the Stores Manager, the director of Human Resources and two department supervisors.

15.  At this meeting, plaintiff described his complaints and asked for action to resolve the ongoing harassment.

16.  Nearly two months passed before the company called another meeting - on March 1, 2004 - at which company officials told plaintiff that he was creating a hostile work environment for others, told to keep his mouth shut and made him out to be the villain.

17.  At this meeting, plaintiff became quite upset and was told to go home on sick leave.

18.  Thereafter, plaintiff was directed to a psychiatrist who recommended

that he return to work if and only if he agreed to attend Anger Management sessions.

19.  After ten weeks out of work on disability, plaintiff met with company officials and was told he could come back to work and directed to keep him mouth shut.

20.  Plaintiff returned to work the second week of May 2004.

21.  Thereafter, the harassment to which he had been subjected worsened.

22.  A hangman's noose was placed hear his work location, his fellow workers continued to snub and ignore him and he was humiliated as he tried to perform his duties.

23.  Between his return and January 2005, plaintiff noticed that materials and supplies were missing from the Stores Division.  When he reported the same, his managers dismissed his statements and treated him as if he was crazy.

24.  On January 27, 2005, at a division meeting, plaintiff raised the missing supplies for discussion.

25.  Plaintiff's supervisor immediately responded that he should drop the matter as nothing was missing and everything was taken care of.

26.  After the meeting ended, plaintiff expressed anger that, for more than two years, he had been accused wrongfully of taking things, but that when he

reported that, to his observation, another employee had taken materials from the division, nothing was done and it was swept under the rug.

27.  The following day, plaintiff apologized to his supervisors for losing his cool the day before.

28.  The same day, a union representative read plaintiff a letter asking him to take vacation time until his retirement [April 1, 2005] or be suspended without pay pending disciplinary action.

29.  Plaintiff refused to take vacation and defendant then suspended him without pay.

30.  On January 29, 2005, agitated and upset by the treatment he had received from defendant, plaintiff went to Arden Hill Mental Health Center in Goshen for medication and a prescription for ongoing treatment.

31.  Plaintiff received nothing in writing from the company advising as to his status until February 16, 2005.

32.  Thereafter, he was advised that he could not return to company property and his photograph was distributed to each entry gate to ensure that he would not be permitted back on company grounds.

33.  By allowing peers and supervisors  to harass plaintiff, by ignoring and failing to investigate his complaints and by allowing co-workers to snub and

isolate him, defendant created a racially hostile work environment for plaintiff.

34.  Defendant so acted intentionally and, by and through the course of conduct set forth above, materially interfered with and adversely affected plaintiff's work environment, making it very difficult for him to carry out his duties and responsibilities.

35.  Plaintiff was not desirous of retiring on April 1, 2005, but agreed to do so only because of the oppressive working conditions defendant subjected him to and his reasonable conclusion that said conditions would not change.

36.  Defendant created and maintained a hostile work to force plaintiff to retire from his position rather than discipline white employees who had created the hostile work environment.

37.  Plaintiff suffered mental suffering as a consequence of defendant's actions and omissions as set forth above.

38.  By dint of his forced retirement, plaintiff lost salary and other benefits of monetary value.

39.  Defendant's acts and omissions were malicious and motivated by plaintiff's race.

## IV. CAUSES OF ACTION

40.  Plaintiff incorporates paras.1-39 herein as if fully re-written.

41.  By creating a hostile work environment on the basis of plaintiff's race, defendant violated 42 U.S.C. sec. 1981.

42.  By constructively discharging plaintiff on the basis of his race, defendant violated 42 U.S.C. sec. 1981.

43.  By creating a hostile work environment on the basis of plaintiff's race, defendant violated section 296 of the Executive Law, State of New York.

44.  By constructively discharging plaintiff on the basis of his race, defendant violated section 296 of the Executive Law, State of New York.

## V.  PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court:

a)  accept jurisdiction of this matter;

b) empanel a jury to fairly decide those issues within its authority;

c) award to plaintiff compensatory and punitive damages against the defendant;

d) award to plaintiff the reasonably incurred attorneys' fees and costs arising from this litigation and

e) enter any other order deemed just and equitable in light of the facts and the law.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

-7-

Counsel for Plaintiff

LAW OFFICES of MICHAEL H. SUSSMAN
PO Box 1005
Goshen, New York 10924

Dated: May 20, 2005
        Goshen, New York